UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
KARA TESORIERO and KRISTA TESORIERO,

                               Plaintiffs,

          -against-                        **DECLARATION IN OPPOSITION**
                                                  **TO OBJECTIONS PURSUANT TO**
                                                    **RULE 72(a)**

SYOSSET CENTRAL SCHOOL DISTRICT      Civil Case No. 02-CV-4348
and THOMAS CASEY,                                  (DRH/WDW)
                               Defendants.
-----------------------------------------------------------------X

      **LAUREL R. KRETZING**, an attorney duly admitted to the practice of law before the Courts of the State of New York and the United States District Court for the Eastern District of New York, declares the following to be true and correct under the penalties of perjury:

      1.     I am a member of the firm of Jaspan Schlesinger Hoffman LLP ("Jaspan") attorneys for the plaintiffs Kara Tesoriero and Krista Tesoriero ("Plaintiffs"). This action is brought pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1671 *et seq*. and violations of the New York State Human Rights Law, § 296 *et seq*. Plaintiffs are two sisters, former students of Syosset Central School District. I submit this declaration on opposition to defendant Syosset Central School District's (the "School District") objections to the Order of Magistrate Judge Wall dated February 19, 2004 (the February Order ). Based upon the discovery abuses of the School District, necessitating multiple applications to the Magistrate Judge to obtain documents that should have been produced or only withheld pursuant to a properly prepared privilege log, the February Order was in all respects proper.

      2.     While the School District's papers in support of its objections discuss the importance of the attorney-client privilege at length it is clear from the record that what is at issue here is the School District and its counsel's failure to discharge their discovery obligations in good faith. Counsel argues that

he is insurance defense counsel and had no knowledge of the documents that he was required to produce until December of 2003, and that when he gained such knowledge, he immediately took action. In fact, this was only after plaintiff obtained irrefutable evidence that the documents existed from co-defendant Thomas Casey.

3. It is respectfully submitted that counsel cannot rely on his own ignorance to excuse his client's failure to produce documents that were clearly relevant and necessary to the claims in this litigation. If counsel had made even a minimal effort to comply with the discovery demands served in June of 2003, he would have known of the existence of the documents then. Both the School District and counsel have obligations to participate in discovery consistent with the Court's rules. Instead of making an effort to identify privileged documents on a privilege log, a necessary step to preserve the privilege, the School District and its counsel either chose a strategy of hiding the documents or simply failed, due to willful neglect, to try to find responsive documents. It is this failed strategy or neglect that resulted in the February Order.

4. The facts of this action revealed through discovery follow and are relevant to the School District's cavalier approach to discovery. While students at the School District in defendant Thomas Casey's 11th grade history class, plaintiffs were subjected to sexual harassment including inappropriate remarks, attention, gift giving and touching. Casey cultivated a romantic-emotional attachment through extended daily personal conversations. The parents, recognizing the inappropriateness of Casey's conduct, complained first to Dr. Linda Fazio, School Psychologist, who did nothing except refer plaintiffs to Dr. Donna Perlow, one of the therapists whose records defendants seek. Dr. Fazio failed to take any action to stop Casey from engaging in said conduct despite requests from the parents that she do so. Plaintiffs' father then complained, at Dr. Fazio's suggestion, to Casey directly. He promised to stop the special

2

attention to the girls. Thereafter, and despite his promise, Casey's inappropriate conduct escalated. Plaintiffs' parents complained to the School Principal, Dr. Jorge Schneider, who was also the Title IX officer for the entire School District. Dr. Schneider gave Casey a mild counseling which was not even placed in his personnel file. Unfazed, Casey still continued to cultivate his romantic-emotional relationship with his student. For example, Casey gave Kara Tesoriero, while she was a student in his 11th grade class, a letter that can only be described as a love letter. In a desperate attempt to get help, this letter was given by Kara to Michael Dolley, her science teacher. Mr. Dolley recognized immediately that such a letter was not an appropriate teacher-student communication and reported it to the assistant principal who in turn reported it to Dr. Schneider. In response to this information, Dr. Schneider, on behalf of the School District, did nothing despite actual knowledge of Casey's conduct. During the course of the summer following plaintiffs' 11th grade school year, Casey engaged Kara nearly daily in highly personal telephone conversations during the middle of the night.

     5.     After the parents confronted the School District with phone bills bearing Casey's telephone number and a romantic message from Casey on the voice mail of Kara's cell phone Casey was finally removed from the classroom. However, by that time, the damage was done.

     6.     Prior to conducting discovery, plaintiffs were aware that Casey had been removed from the class room but were unaware what, if any further action had been taken to discipline Casey. Since it can be expected that the School District will argue at trial that it took all appropriate steps in response to the complaints it received, the disciplinary action and the investigations on which such action was taken is directly relevant to the claims for relief and defenses in this action. Notwithstanding the fact that the School District undoubtedly will use their actions as a defense to this action, the only documents produced as

automatic disclosure contained only documents which had been turned over by plaintiff during the GML §50-h proceeding.

7. On June 24, 2003, plaintiffs served Interrogatories and Demands for the Production of Documents upon Defendants. A copy of Plaintiffs' First Set of Interrogatories and Request for the Production of Documents to the Defendant School District are annexed hereto as Exhibits "A" and "B", respectively. On September 5, 2003, defendant School District provided its responses to the plaintiffs' demands but failed to provide a single document or piece of substantive information. The School District's Responses to Interrogatories and Demand for the Production of Documents are annexed hereto as Exhibits "C" and "D", respectively. Although it was evident that the School District was withholding documents, no privilege log was served.

8. Particularly important to note at this juncture is the fact that plaintiffs' discovery demands specifically sought information relating to disciplinary action taken against defendant Casey, who had been suspended by the School District subsequent to September 10, 2001, as a result of the actions alleged in this complaint. The School District presumably conducted a fact finding or investigation as a predicate to the suspension or a subsequent disciplinary hearing. One does not need to be a specialist in either Labor Law or Education Law to realize that a public school teacher cannot be suspended without a single document being generated.

9. Rather than answering the interrogatories or providing documents in lieu of answers, the School District responded to each of the interrogatories as follows: "This request is overly broad, unduly burdensome and irrelevant to this matter." In addition, the School District claimed in response to Interrogatory No. 6 and Document Demands 8, 9 and 15 (which sought notes prepared by the School District in connection with plaintiffs' Notice of Claim and all documents related to same) that the documents

4

requested are "privileged". However, as previously noted, no privilege log was served in conjunction with the discovery responses.

10. By letter application dated October 2, 2003, I moved to compel production of the above described documents. A copy of this application is annexed as Exhibit "E". The application was granted by Order dated October 16, 2003 (the "October Order") (a copy of the October Order is annexed as Exhibit "F") . In the October Order the Magistrate Judge specifically provided that "no privilege has been asserted or logged, and any unasserted privilege is waived." The School District filed no objection or appeal from the October Order.

11. On October 31, 2003, the School District received a seemingly substantive response to plaintiffs' prior demands. However, no documents evidencing what disciplinary action, if any, had been taken against Mr. Casey were produced. Included as part of the School District's October 31, 2003 production was, for the first time, a privilege log dated October 30, 2003, in disregard to the fact that the October Order already ruled that the School District had waived the privilege. However that privilege log listed only <u>two</u> (2) documents, neither of which was designated as having been prepared by Mr. Zuckerman. Rather, they were represented to have been prepared by Dr. Jeffrey Streitman, Superintendent of Schools, with respect to a meeting he held with Casey regarding the Notice of Claim. A copy of this privilege log is annexed as Exhibit "G".

12. On November 10, 2003, we commenced the deposition of Thomas Casey. At the beginning of the questioning, I asked Mr. Casey about his employment status. His attorney produced a Settlement Agreement and a Side Agreement between Casey and the School District. The Settlement Agreement references the fact that charges had been filed against Casey by the School District on January 15, 2002. I then requested a copy of the charges. Mr. Smith indicated that since Casey had voluntarily

5

produced the Settlement Agreement and Side Agreement, he had waived any issue of confidentiality. Mr. Liotti, attorney for Casey, having volunteered the Settlement and the Side Agreement, acknowledged he had waived any confidentiality but requested that I not publicize the documents or the information contained therein in the newspaper. At that point, I suggested that the documents would be covered by the Confidentiality Stipulation that I had previously circulated. Mr. Smith said he would have someone send the charges over by fax so I could question Casey about the allegations. The promised charges never materialized that day. The very next day, November 11th, I received a faxed copy of a letter application from Mr. Smith that stated, for the first time, that the School District would not sign a routine Confidentiality Stipulation. That issue was only resolved by letter motion to Magistrate Judge Wall, resulting in a Stipulation and Order of Confidentiality.

13. On November 18th I deposed Dr. Streitman. He testified that he is in charge of teacher discipline and the person that investigated this matter on behalf of the School District which resulted in formal charges against Casey. Mr. Streitman acknowledged that he maintains a file on disciplinary matters pertaining to Casey. He further acknowledged that charges were issued and contained in his file, along with other fact-finding material such as an interview with Casey and other School District witnesses which has not been produced. Mr. Smith directed Dr. Streitman not to respond to any further questions about his investigation. Interestingly, Dr. Streitman's testimony <u>did</u> reveal that the two documents listed on the School District's privilege log were not prepared by Dr. Streitman in connection with litigation but as part of his investigation into whether Casey should be disciplined as the result of his conduct with respect to the Tesoriero girls and include statements made by Casey. These documents, the only ones even listed on the privilege log were not privileged and should have been produced (See Exhibits "H" and "G"). To date, they have not been produced.

6

14. The purported explanation for non-production and the directions not to answer questions about the documents relevant to the disciplinary action was that records with respect to a teacher disciplinary action are confidential. Pursuant to Magistrate Judge Wall's Order, the Confidentiality Stipulation was negotiated between counsel and so-ordered by the Court on December 9, 2003. At Mr. Liotti's request all "telephone records, employment records, education records, disciplinary records, charges of alleged misconduct and the Settlement and Side Agreements previously produced" are covered by the Agreement.

15. I had anticipated that the Confidentiality Stipulation and Order would resolve this issue because it would remove the School District's stated justification from withholding the documents. It did not. By letter motion dated December 19, 2003 I moved on behalf of plaintiffs to compel production of the documents and compliance with the October Order. A copy of my December 19th letter is annexed as Exhibit "I". On January 14, 2004, the Magistrate Judge issued an Order (the "January Order") directing the School District to produce all documents responsive to the Court's October Order relating to the sexual harassment/discrimination claims and disciplinary action(s) against Casey (a copy of the January Order is annexed as Exhibit "J"). The Court also ordered Casey to produce all documents responsive to the November 14, 2003 unanswered document demand on or about January 21, 2004. The Court further ordered both defendants to produce any other documents which were responsive to the Court's October Order that have not been listed on the privilege log (which in the case of the School District consisted of two items) on or before January 21, 2004.

16. On January 20, 2004, I received a letter from William Boltrek, of Baxter & Smith, which only enclosed Casey's 3020-a charges dated January 14, 2002 and the Settlement Stipulation (a copy of the letter is annexed as Exhibit "K"). By letter dated January 21, 2004, I requested that the School District

7

produce the additional documents contained in Dr. Streitman's file (a copy of my January 21, 2004 letter is annexed as Exhibit "L").

17. The next day, on January 22, 2004, I received defendant Casey's discovery response. His response included a list of documents that the School District included on a privilege log prepared in the context of the 3020-a case against Casey (the 3020-a log). The 3020-a log confirmed the fact that the School District failed to produce substantial relevant evidence which has been previously requested and previously ordered to be produced by the Magistrate Judge. Perhaps even more importantly, the School District failed to disclose the existence of these documents insofar as the particular documents which are the subject of the objections were never even listed on the privilege log belatedly previously served by the School District in this action after the October 16, 2003 Order. It is important to note that contrary to the assertion in the Statement of Fact, the School District did not, and has not, produced the 3020-a log or any other documents that I believe must be conveyed in the 3020-a file maintained by Dr. Streitman.

18. The Documents consist of notes and tape recordings of witness interviews made in the course of what was apparently a combined 3020-a investigation and in response to the Notice of Claim filed by plaintiffs. The witness interviews were conducted by Richard Zuckerman, Esq. It is obvious that the documents were well known to the School District prior to the commencement of this action since the documents are listed on the 3020-a log, dated June 17, 2002. These documents should have been previously produced or at the very least these documents should have appeared on a privilege log served in connection with the School District's first production or, at the very least the belated privilege log previously served by the School District in this action on October 30, 2003.

19. In an effort to resolve our discovery dispute in good faith without the need for further intervention, I wrote to both Mr. Boltrek and Mr. Smith by letter dated January 22, 2004 and annexed the

8

privilege log produced by Casey (a copy of letter is annexed as Exhibit "M"). I circled the non-privileged documents which I wanted to be produced in order for us to proceed with the depositions of Dr. Streitman and Mr. Casey as ordered by the Court. I received no response. On January 27, 2004, I faxed a letter to both defendants' counsel reminding counsel that we needed to schedule depositions but that I expected to receive more documents (see Exhibit "N"). On January 29, 2004, I called Mr. Smith to discuss various outstanding issues, including the documents. He advised me that they would not produce the documents to me based upon privilege significantly, given his current position that I be ordered to return the documents, he rejected my suggestion that they be submitted to Court for *in camera* review. By letter dated January 22, 2004, almost six months and two Orders from the Court compelling production of the documents, the School District served a privilege log and listed all the documents as privileged work-product. The School District now asserts that even that was a mistake and the documents are really privileged attorney-client communications. This argument is belied by the fact that in the notes and audio tapes produced, insofar as at least some of the witnesses were represented by either their union representative or union counsel.

20. Given the conduct described above, the February Order properly ordered that the documents be produced and that plaintiff is entitled to sanctions in the form of attorney's fees and costs. Litigants and their attorneys have an obligation to play be the rules of the Court. Part of the discovery obligation is to participate in the production of documents in good faith. Litigants are not permitted to resort to hiding the existence of documents they do not want to produce or willfully refraining from ascertaining whether documents exist. The School District has not only failed to participate in discovery in a meaningful way they have ignored Orders of the Court specifically directing them to produce the

documents. The School District's conduct in this case and the arguments that they are sponsoring to excuse that conduct are patently frivolous.

**WHEREFORE**, it is respectfully requested that Magistrate Judge Wall's Order be upheld in all respects and for such other and further relief as may seem just and proper.

Dated: Garden City, New York
       March 10, 2004

                                              JASPAN SCHLESINGER HOFFMAN LLP
                                              Attorneys for Plaintiff

By:    <u>s/Laurel R. Kretzing</u>
        Laurel R. Kretzing (LK 8812)
        300 Garden City Plaza, 5th Floor
        Garden City, New York 11530
        (516)746-8000