50

Streitman

1
2  Q. What was the purpose of the
3  interviews?
4  A. The purpose of the interview was
5  to, in fact, determine if Mr. Casey was
6  going to be formally disciplined for his
7  inappropriate behavior.
8  Q. When did you start these
9  interviews?
10 A. They would have occurred in and
11 around, I believe, November, October,
12 November of 2001.
13 Q. Who did you interview?
14 A. Mr. Richard Collins, the
15 assistant principal. I believe Dr. Kaley
16 and I believe one of the guidance
17 counselors, Lori, whose last name I can
18 never pronounce correctly.
19 Q. Haubrich?
20 A. That would be correct.
21 Q. Did you interview Dr. Fazio?
22 A. I believe I did also.
23 Q. Did you interview Mr. Dolley,
24 Michael Dolley?
25 A. Yes, also.

51

Streitman

1
2  Q. Did he interview Dr. Schneider?
3  A. I would say that, yes, the
4  answer is yes.
5  Q. Did you interview Mr. Gleason?
6  A. No, at least not to my
7  recollection.
8  Q. Besides Collins, Kaley,
9  Haubrich, Dolley, Fazio and Schneider, do
10 you recall interviewing anyone else?
11 A. No.
12 Q. Did you interview Mr. Casey?
13 A. Yes, I did.
14 Q. Aside from the September 10th?
15 A. I did.
16 Q. When did that take place?
17 A. To the best of my recollection,
18 in November some time.
19 Q. What did Mr. Casey tell you in
20 that November meeting?
21    MR. SMITH: Is this the person
22 that had counsel?
23    THE WITNESS: Yes.
24    MR. SMITH: I'm going to object.
25    MS. KRETZING: What is the basis

52

Streitman

1
2  for the objection?
3     MR. SMITH: Because these are
4  hearings that are held with counsel
5  either in preparation of litigation or
6  essentially a legal procedure against
7  Mr. Casey. Counsel is present for
8  the very reason that they are being
9  asked to provide legal guidance and I
10 think this is beyond the scope of
11 discovery. I think it's
12 confidential.
13    MS. KRETZING: Well, you're
14 telling me he can't say what Casey
15 said to him? I'm not asking him for
16 his counsel's statements. I'm just
17 asking him for what Mr. Casey said in
18 the meeting, that's like fact-finding.
19    MR. SMITH: I believe it's also
20 part of this 3202A process which is a
21 confidential process.
22    I'm going to direct the witness
23 not to answer on the basis of
24 confidentiality privilege.
25    MS. KRETZING: Just so I have

53

Streitman

1
2  the objection correctly, the objection
3  is, if I asked him what Mr. Casey
4  said, you would object to that?
5     MR. SMITH: Yes.
6  Q. Aside from this November
7  meeting, did you interview Casey again?
8  A. No.
9  Q. So you met with him in September
10 and you met with him in November?
11 A. I believe it was November. The
12 date could be incorrect.
13 Q. Aside from yourself, who was the
14 counsel present?
15 A. Mr. Richard Zuckerman.
16 Q. Who is Mr. Zuckerman?
17 A. He is the counsel for the
18 district. He is a member of the firm
19 Raines and Pokerbin (phonetic).
20 Q. What was the purpose of
21 Mr. Zuckerman being present?
22 A. Mr. Zuckerman was asked to be
23 present by the district in anticipation
24 that the conversation or situation would
25 lead to disciplinary charges.

**Page 54**

Streitman

Q. Is it part of the normal charge of a school district to discipline teachers that have behaved inappropriately?

MR. SMITH: Object to form, but you can answer.

A. Yes.

Q. Based on the charge that was made or based on the claims that had been made, was it appropriate to initiate disciplinary proceedings against Mr. Casey?

MR. SMITH: I'll object to form, but you can answer it.

A. Yes.

Q. Did you believe there was a basis to discipline Mr. Casey as a result of the claim of his behavior with respect to Kara Tesoriero?

A. Yes.

MR. SMITH: We will stipulate on the record that charges were filed against Mr. Casey.

Q. Let me just ask this: Was

**Page 55**

Streitman

Mr. Casey charged with insubordination?

A. No.

Q. How many charges were filed against Mr. Casey by the school district?

MR. SMITH: Again, that's the same thing. You're asking him to -- we don't have a ruling on this issue and until we do, I'm going to direct the witness not to answer.

MS. KRETZING: We could do one of two things. We could call the Magistrate. I feel like every deposition I have to call the Magistrate. Or we could do it on papers, but I don't want to have -- I would like to bring the witness back if I get the information that I want.

MR. SMITH: The possibility exists because of this 3202A situation that you may be required by the Magistrate to just come back and discuss those particular charges. Do you understand that?

THE WITNESS: Yes.

**Page 56**

Streitman

MR. SMITH: For good or bad, I might need you to come back and be deposed just on those particular issues. Okay?

THE WITNESS: Okay.

MS. KRETZING: I'm going to ask the witness about Plaintiff's 1 and 2 now. Mr. Casey produced these himself.

MR. SMITH: I understand that.

MS. KRETZING: All right. We don't have a problem with that?

MR. SMITH: No.

Q. Dr. Streitman, I'm showing you what we marked at another deposition as Plaintiff's Exhibit 1 entitled "Settlement Agreement." Have you ever seen this document before?

(Handing.)

A. (Perusing.)

I have.

Q. Did you play some role in the formulation of this document?

A. I did.

**Page 57**

Streitman

Q. What role did you play?

A. Providing information to the district's counsel.

Q. To your knowledge, was this document signed by the school district?

A. Yes.

Q. Who signed it on behalf of the school district?

A. I believe district counsel.

Q. Do you recall when it was signed by district counsel?

A. I do not.

Q. Was this approved by Board resolution?

A. I believe so.

Q. Is that a resolution? It's a written resolution, correct?

A. Yes.

Q. Do you recall when it was produced or approved?

A. I do not.

MS. KRETZING: I'd ask that the Board resolution approving this settlement agreement be produced.